JOSEPH HEWETT & *al. versus* JOHN H. ADAMS *& als.*

Under R. S., c. 47, the Court must adjudicate that the assets are insufficient to pay the claims against the bank, before the receivers can file their bill in equity against the stockholders.

And the allegations in such a bill, that such adjudication had been made, can be proved only by the record of a judgment, to which the bank was a party.

Docket entries, made under a petition to which the bank was not a party, are not sufficient.

It seems, that the petition of the bank commissioners for the appointment of receivers, &c., duly entered and continued upon the docket, until such adjudication, would be the proper process under which all the proceedings should be had prior to the filing of the bill.

BILL IN EQUITY, by the receivers of the Shipbuilders' Bank, against certain persons alleged to be stockholders therein. The case has been before the Court on demurrer. See 50 Maine, 271. The case was heard on bill, answer and proofs.

On Dec. 28, 1854, Thomas Jewett and James Hovey, Bank Commissioners, complained to RICE, J., in vacation, that the Shipbuilders' Bank was insolvent, and prayed for a temporary injunction and the appointment of a time and place for a hearing. A decree of temporary injunction and order of notice, were duly made and issued, returnable

Hewett *v.* Adams.

Jan. 10, 1855, when, upon a full hearing, the injunction was made perpetual, and Joseph Hewett, Alvord Levensaler and Abiel W. Kennedy were appointed receivers, who thereupon gave the bond required by the statute.

No entry was ever made upon the docket of the Court of the complaint for injunction, nor of any of the proceedings, relating to either the temporary or perpetual injunction against the bank ; nor was any record of any of said proceedings or injunctions ever made in any county in the State.

At the January term, 1859, William Wilson and als., entered a petition in Lincoln county, alleging themselves to be creditors of said bank, &c., and praying that the receivers be required to execute their duties or be removed, &c. ; upon which notice was ordered. On Jan. 25, the receivers submitted their first report and the entry thereof was made under the entry of this petition. The report was ordered to be filed, and the receivers "forthwith to settle and adjust all matters relating to the affairs of the bank; and they are hereby directed to file a bill in equity, against the stockholders, to compel each and all of them, to pay in to them, the amount of their stock, in accordance with the statute ; and the money and funds, now in their hands, to be kept at interest, until further order of Court." Other reports were subsequently made of the names.

No other entry, or record, was ever made of either of the reports of the receivers, or any action of the Court or any justice thereof, concerning them, except that contained upon the docket under said petition of Wilson & als.

The remaining facts sufficiently appear in the opinion.

*Peter Thacher & Brother*, for complainants.

*A. P. Gould*, for Adams & others.

*Wm. G. Crosby*, for Harris & others.

*J. H. Drummond*, for Bryant & others.

DANFORTH, J.—The plaintiffs, as receivers of the Ship-builders' Bank, file their bill against certain persons alleged to be stockholders therein, and liable for the bills issued by it and remaining unpaid at the expiration of the charter.

The bill has been before the Court upon demurrer which was overruled. It now only remains to consider whether the material allegations, all of which have been denied in the answers, have been proved by competent testimony.

The liability of stockholders for the payment of unre-deemed bills, at the time this bank was chartered, was found-ed upon § 45, c. 77, R. S. of 1841. Subsequent sections provided a remedy to enforce this liability.

By the law of 1855, c. 164, subsequently incorporated into the R. S. of 1857, when receivers were appointed for any bank, an entirely different remedy was provided for the holders of bills, the liability of the stockholders, by an express provision of the law, remaining the same.

By this law, the receivers, in behalf of the claimants, are to file a bill in equity. But before this can be done, certain prerequisites are necessary. The amount of the bank's in-debtedness, and its insolvency are first to be ascertained. For this purpose, all claims are first to be laid before the receivers for their examination and allowance. After which, the receivers are to make a detailed report of their doings to the Supreme Judicial Court, which is to be accepted, if no objection is made thereto, and the Court is satisfied of its correctness.

The receivers are also to report to the Court the amount and value of the assets in their hands, whereupon the Court adjudicates upon the question of insolvency. And, upon this adjudication depends the authority of the receivers to file their bill. The acceptance of and judgment upon the report of claims by the receivers, would seem also to fix the amount due from the bank and the persons to whom due.

Hence, in the bill, after the allegations of the appoint-ment and qualification of the receivers, which appear to be

Hewett *v.* Adams.

sustained by the proof, it is alleged that the required reports were made and the necessary adjudications followed.

Have these allegations been proved by legal evidence. If so, it would be a judgment of Court which would be binding upon the bank, and the stockholders, as being in privity with the bank, thereby setting at rest most of the questions raised in the argument of counsel, leaving to be determined only the questions as to who of the defendants are stockholders. If no such judgment is proved, then the bill was filed without authority, and there would be no proof as to any unredeemed bills of the bank, for none other is offered.

This adjudication is in fact a judgment of the Court, and, as such, must be proved by its records, and by them alone.

There seems to be some proof of an adjudication by the Court upon reports offered, though, for aught that appears, it has never been extended upon the records. Certain docket entries are offered in evidence, by which it appears that Wm. Wilson & als., claiming to be creditors of the bank, at the January term, 1859, of this Court, in Lincoln county, filed their petition, asking that the receivers might be required to execute their trust, or be removed, and that they be required to make a report of their doings, and of the amount and value of the assets in their hands. This was duly entered upon the docket as an original process. The receivers appeared by their counsel, and made the reports asked for. It does not appear that these reports were accepted at this term, but it does appear that an order was passed requiring, among other things, that they should settle the affairs of the bank forthwith, and file a bill in equity against the stockholders to compel them to pay the amount of their stock, according to the statute. At the two subsequent terms, this petition was left off the docket. But, at the January term, 1860, on motion of petitioners and by order of Court, it was brought forward, another report made by the receivers and accepted by the Court. And then, the Court adjudge the assets of the bank insufficient to pay its

liabilities. These facts appear by docket entries only, and all of them entered under and as relating to the matter of the petition of Wilson & als., and apparently intended as a disposition of the matters in controversy contained therein, and between the parties thereto. We do not perceive that the judgment of Court could go any further, and settle any controversies not raised in the precept, or be binding upon persons not parties or privies.

It will be noticed that, in this petition the receivers were called upon to give an account of their stewardship, as officers of the Court, and not as representatives of the bank. The object was not to settle the amount due from the bank, but to require the receivers to do their duty and close up their labors. It is not easy to see how the bank can, in any legal sense, be considered a party to this petition, or be bound by anything done under it. And yet, this is all the evidence we have of any judgment of the Court as the foundation of this bill, or of the amount of the liability of the stockholders.

On the other hand, there ought to have been a process in Court to which the bank would be a party, and under which the proper adjudications might have been made. The receivers were appointed under petition from the bank commissioners, after notice issued, and in which the bank is respondent. True, this was done before a Justice of the Court in vacation, where no entry or record of Court was or could be made. But when receivers were appointed they were under the control of the Court, and the jurisdiction of the Court, as well as all its subsequent doings relate back to, and depend upon the original process, and are incidental thereto until the end is reached, which, in the case of insolvent banks, is when the reports of the receivers are adjudicated upon. *Atlas Bank* v. *Nahant Bank*, 23 Pick., 480, 486.

To this original process the bank is a party, and remains so to the end. Other parties may come in, particularly

Hewett *v.* Adams.

when the receivers make their report, as is provided by the statute. But this does not change the original parties.

Although a part of the proceedings under this process, as the beginning of it, may be done under the direction of a Justice of the Court in vacation, and without a record, yet something must be done in Court, and that must be recorded and proved by the record, and, when entered, the original process should be entered and recorded or some entry made, so that it shall appear as part of the original process, and done under and by virtue of it.

Now, it does not appear that this original process, nor any other to which the bank was made a party, was ever entered in Court. The bank, as a party, has never been in Court at all. How then can any judgment be rendered which shall bind it? No matter how open the doings of the Court may be, or how publicly its discussion of matters which may affect the interests of any party, such party is not bound to appear, and cannot be concluded by any such doings, until called in by a proper notice and such as can be proved by a record. It is undoubtedly true, that, when once in Court, a party is bound to take notice of the doings of the Court in relation to that process by which he is called into Court; and it is not to be presumed that the Court will proceed until the party has had an opportunity of being heard. But no such presumption as this prevails, until the party is once brought into Court by due notice.

For this reason it does not help the matter to consider the report of the receivers an independent entry, and not a part of the petition or process under which it appears upon the docket. For, still there would seem to be, not only an entire want of any proof of notice, but satisfactory evidence that no notice was given.

But, it is said that the receivers are the bank, and, being a party to the report and in Court, they thereby become a party to the judgment and it becomes binding upon the bank, and upon the stockholders.

No authority, however, is cited to show this entire swal-

lowing up of the bank in the receivers.   True, it is, that in many respects they represent the bank.   So, in many others, they act for the creditors.   And, in this instance, two of them, at least, would appear to be creditors.   In allowing claims, they may be considered rather as commissioners of insolvency, and not as agents of either party.   And, then again, all the authorities seem to concur in considering them as officers and servants of the Court, while the statute authorizing their appointment and regulating their proceedings would seem to recognize the bank as still having an independent existence, for certain purposes at least.

The bond of the receivers runs to the bank; suits for the collection of demands may be commenced in the name of the bank; if the bank should prove to be solvent, the balance of its property is to be returned, not to the stockholders, but to the bank.   And, as we have already seen, and what would seem to be conclusive in the case, the bank remains a party to the original process until its close.   And, as such party, is by the statute entitled to be heard on the acceptance of the receivers' report, and, when objection is made in writing by any claimant, is entitled to a jury trial.   Sec. 71, c. 47, provides that, when either party requests it, a trial may be had by a jury, with all the incidents of a jury trial.

If, then, the bank and receivers are not one and the same, there does not seem to be any proof of any judgment of Court which would be authority for the commencement of this process, nor any proof that there is any amount of unpaid bills for which the stockholders would be liable.

The judgment proved is in another process, for another purpose, and between other parties, one of which, the bank, had no notice, in the rendering of which it has had no opportunity to be heard, and not being bound by it, neither can it bind the stockholders.   If these records were merely informal, — if there was enough in them to show that the party interested, and now objecting, had had an opportunity to be heard, and substantial justice had been done,

then the Court, having control of its own records, would have them amended so as to conform to the fact, and be careful that no party should suffer for any neglect or want of knowledge on the part of its officer. But, in this case, the difficulty is not so much with the record as with the facts. There is an attempt to bind a party by a judgment in which he has had no opportunity to be heard, thereby violating one of the fundamental principles of justice as held by all judicial tribunals.

This right to be heard in matters affecting our interests is a most sacred one, and should, on all occasions, be most carefully guarded. *Bill dismissed.*

WALTON, DICKERSON and BARROWS, JJ. concurred.
KENT, J., did not concur.

The following opinion was submitted by

APPLETON, C. J. —Bank Commissioners are public officers, appointed for the discharge of certain specified duties.

By R. S., 1857, c. 47, § 57, in case of over issue or other misconduct on the part of any bank, the bank commissioners are authorized to make complaint " to any Justice of the Supreme Judicial Court, who shall thereupon summon such bank, by a notice to its president or cashier, to appear before him, at a time and place appointed, to answer to such complaint and show cause why an injunction should not issue against it." Any Justice before whom these proceedings are had, may issue an injunction, and, " after a full hearing of the bank upon the matters aforesaid, (its alleged delinquencies,) may dissolve, modify or make perpetual the injunction; make all needful orders and decrees to suspend, restrain or prohibit the further prosecution of the business of the bank, according to the course of chancery proceedings; at his discretion, may appoint receivers to take possession of its property as hereinafter provided, subject to the rules and orders from time to time prescribed by said Court, or any Justice thereof in vacation."

This section obviously refers to judicial proceedings to

be entered upon the docket of the Court and become a matter of record, though, to guard against any sudden emergency, when prompt action might be required to protect the public, authority is given for the action of a single Judge in vacation.

It authorizes the appointment of receivers, who are officers of the Court, subject to its rules and orders and amenable to its authority, — with certain duties to perform, and whose reports, as to the manner of their performance, are made to and accepted or rejected by the Court, and, if accepted, become a part of its records.

The rules for the guidance of the receivers are to be prepared by the Court, or by a single Judge, the statute thus recognizing a process pending, while authority is conferred upon a single Judge in vacation, in case no Court should be in session.

The receivers are officers of the Court, not of the Judge by whom they may happen to be appointed. They are the officers and representatives of the Court. They are entitled alike to its advice and protection. Their appointment is in a particular suit and they continue only to act during its pendency. The suit ended, their official existence ends. There can be no receiver without a cause to which his action must relate.

When the Act incorporating a bank is repealed, the charter is regarded as having expired. *Crease* v. *Babcock*, 23 Pick., 335. Such, too, would be the case upon the final decree upon proceedings in behalf of the bank commissioners. Until the final decree of the Court perpetually enjoining corporate action, a bank would seem to have a qualified existence.

The bank commissioners, after their action under § 57, seem to have proceeded no further. Their complaint was never entered in Court, as it should have been, for it is not possible that the Legislature ever intended that there should be a judgment of sequestration, by which the whole estate of a corporation shall be taken from its control and dispos-

ed of by others without a formal decree of the Court affirming such action duly entered upon its records. That this is so, will be abundantly apparent by recurring to the subsequent sections of the Act under consideration.

By § 70, "all claims and demands are to be laid before the receivers for examination and allowance." "They shall make a report in detail to the Supreme Judicial Court at such time as the Court directs, specifying all claims presented and the amount allowed in each case, which shall be accepted, if no objection is made thereto, and the Court is satisfied it is correct and ought to be allowed."

This section obviously refers to action by the Court in reference to the report of one of its officers, upon matters submitted to such officer, arising in a cause pending before it. The Court cannot act judicially upon a cause not upon its docket. The report of a receiver, like that of an auditor, relates to some suit already existing and pending. The Court adjudicates upon the report thus offered, accepting or rejecting it, as it "is satisfied it is correct and ought to be allowed" or not.

By § 71, objections by claimants may be made to the acceptance or rejection of claims, "and the Court shall hear the parties and determine the case." If either party requests it the Court may direct an issue to be made up and submitted to the jury. Questions of law, arising in the course of the proceedings, may be made and carried before the full Court in the manner provided in actions in Court.

The report of a receiver is not to be entered as a new and substantive proceeding by itself, and as a new action in Court. "The course of chancery proceedings" must govern. It is to be entered under the complaint by the bank commissioners, to which it relates, and under and by virtue of which all the proceedings since the original complaint have been had and to which they refer as growing out of, and being parts and necessary consequences thereof. An issue of law cannot be directed, nor can questions of law be raised, when there is no cause pending, as would be the case, if the

complaint is not entered.   The section presupposes the existence of the complaint of the bank commissioners as pending upon the docket of the Court.

By § 72, the receivers are to report to the Court the amount and value of the assets in their hands belonging to such bank.   " When the claims against a bank have been ascertained and determined by the Court, or by the Court and jury upon an accepted verdict, * * * the Court shall order the proceeds of the assets to be applied to the payment thereof."

All these proceedings are to be according to the course of chancery.   Reports to the Court are made by its officers and accepted or rejected,—but they all grow out of and are necessary sequences of the original proceeding which is still pending.   An issue may be made up and submitted to the jury precisely as in equity when, upon a bill pending before him, the chancellor directs an issue.

By § 73, " if it appears to the Court" that the assets are insufficient to pay the claims against the bank, " the receivers shall forthwith file their bill in equity, in their own names, but in behalf of the claimants, against the persons liable as stockholders," and upon the hearing the Court shall determine and assess what the several stockholders shall pay, &c.

The authority to commence a bill is not given to the receivers in the first instance, and as a part of their official duty.   It may never become necessary.   It will hardly be pretended that a bill could legally be filed before these reports are made, or while litigation in reference thereto is pending.   The bill is to be filed, after the insufficiency of the assets of the bank to pay the claims against it have been made to appear to the Court, by the reports of its receivers, made in conformity with its orders and duly accepted.

All except the preliminary proceedings are to be in open Court, at regular terms thereof, and, of necessity, imply some process pending upon its docket to which they relate and from which they legitimately flow.

Hewett *v.* Adams.

It is apparent, therefore, that the complaint of the bank commissioners should be entered and remain upon the docket until the final decree of the Court. It was the duty of the bank commissioners to see that such entry was made, and to supervise the proceedings instituted by them for the public protection. The mere making a complaint under § 57 was but the beginning of official action. They were as much bound to attend to the proceedings consequent upon the complaint as they were to make it. They made a complaint and then left it to shift for itself.

By § 73, as already observed, no bill is to be filed until it appears to the Court that the* assets of the bank are insufficient to meet the claims against it, and the amount of claims and assets are to be ascertained as prescribed by the preceding sections. All these sections negative action in vacation or by a single Judge and require that of the Court at one of its regular terms. They imply some cause upon its docket, in which reports are to be made and accepted or rejected.

The bill was before the Court upon demurrer. 50 Maine, 280. It alleged the existence of the prerequisites necessary by statute for its maintenance.

The cause is now before us upon bill, proof and answer, and it appears that the bank commissioners proceeded under § 57 to procure an injunction and appoint receivers, — and that no further action in the premises was had by them. They never entered their complaint upon the docket of the Court. The receivers never made any report of the claims against the bank, in any process between the commissioners and the bank, as required by § 70. The claimants had no opportunity in such suit to contest the claims allowed and disallowed, as provided by § 71. There was no report of assets to the Court and no order of distribution by the Court, as directed by § 72. There is no adjudication that the assets are insufficient and that a bill in equity should be brought by the receivers under § 73. All these deficiencies are apparent. They must have existed, for there was no

complaint against the bank upon the docket, and no Court can properly take cognizance of proceedings not pending before it.

The petition of William Wilson & als. v. the receivers, praying that they may be required to execute their duties or be removed, was an anomalous proceeding, unknown to law or equity practice, and unauthorized by any statute. It was entered as an action upon the docket. But any party, in any suit, might as well, as these petitioners, have petitioned the Court that his opponent should be ready to proceed to trial, or do some other act required for the speedy disposition of a cause pending. The paper filed and its entry are at variance with the recognized and well established rules of procedure. The entries under this petition cannot affect the rights of those now litigating before us. The respondents are strangers thereto. They neither appeared nor were notified to appear in that proceeding, and are not concluded by any entry made therein.

All the orders of the Court under the complaint instituted by the bank commissioners against the bank, which should have been entered upon the docket at the term next after it was made, the various reports of the receivers, the motions relating to their acceptance or rejection, and the orders of Court thereupon, should have appeared as in that suit. Instead of this, there was no original entry, and consequently what took place after the first action of the Judge in vacation was without actual or constructive notice to those whose interests were to be determined by the adjudication of the Court. A final decree of a Court presupposes anterior proceedings to which it applies, and upon which it is based. But when there has been no entry of the bill or complaint, it is difficult to perceive how there can be a final decree.

The original action of the Judge in vacation, and the appointment of receivers, was in accordance with § 57, and it is owing to the negligence of the commissioners that the

proper entry of the complaint was not duly made and that the subsequent proceedings are fatally defective.

*Bill dismissed, without cost to either party.*

CUTTING, J., dissenting. — The Shipbuilders' Bank was incorporated by a special law of this State, on March 7, 1853, subject to the usual restrictions and liabilities of banking corporations. During that year the bank was duly organized and went apparently into successful operation.

The liabilities of banking corporations, at that time, were created by force of c. 1, § 45, of the Act of Amendment to the revision of 1841, which provides that, —

"The holders of stock in any bank, at the time when its charter may expire, shall be liable, in their individual capacities, for the redemption and payment of all bills, which may have been issued by said bank, and which shall remain unpaid, in proportion to the stock they may respectively hold at the dissolution of the charter."

*Section* 60, directs the Governor, with the advice of the Council, to appoint two bank commissioners, who, by § 61, are authorized and required to visit every bank in this State, as often as they deem it expedient for the public safety, &c.

*Section* 62. "If, upon examination of any bank, said commissioners shall be of opinion that the same is insolvent, or that its condition is such as to render its further progress hazardous to the public, or to those having funds in its custody, or that said bank has exceeded its powers, or has failed to comply with all the rules, restrictions and conditions provided by law, they may apply to some one of the Justices of the Supreme Judicial Court, to issue an injunction to restrain such corporation, in whole or in part, from further proceeding with its business, until a hearing of said corporation can be had. And said Justice shall forthwith issue such process; and, after a full hearing of the said corporation upon the matters aforesaid, may dissolve or modify, or make perpetual the same; and make such orders and decrees to suspend, restrain or prohibit the further prosecution

of the business of said corporation, as may be needful in the premises, according to the course of chancery proceedings ; and, at his discretion, may appoint agents or receivers to take possession of the property and effects of the corporation, subject to such rules and orders as may from time to time be prescribed by the Supreme Judicial Court, or any Justice thereof in vacation."

The foregoing section and its reënactment, by § 57, c. 47 of R. S. of 1857, are the only provisions authorizing the bank commissioners to apply to this Court for a temporary or permanent injunction, or the Court, or any Justice thereof, to grant the same. Other provisions in the statutes refer to the remedies of the creditors of a bank, who neglect to pay any of its bills, when duly presented, and, upon certain facts appearing, require the Court to appoint three receivers and require bonds, instead of two or more, as in case of injunction, without a provision for bonds, but confer no power to grant *injunctions*. It is necessary that this distinction should be noted, since it obviates many points raised by the respondents' counsel. *Hewett* v. *Adams*, 50 Maine, 280.

On Dec. 28, 1854, the bank commissioners, as the exhibits show, made a written application to Judge RICE for an injunction against the Shipbuilders' Bank, for causes therein alleged. A temporary injunction was accordingly granted, which, on January 10, 1855, after a hearing by the bank, was made perpetual by an order and decree, wherein "the said corporation, its stockholders, officers and agents were prohibited, restrained and enjoined from the further prosecution of the business of said corporation ;" and thereupon receivers were appointed, as provided by § 62, before cited, who were required to "demand and receive of the officers of said bank, all its real and personal estate, with all its books, papers, title deeds and evidences of debts due said bank," — and to "proceed with due diligence to sell and dispose of said property and collect the debts due said corporation, and with the proceeds thereof to pay the claims

against said corporation, in such manner and at such times as thereafter should be ordered by the Supreme Judicial Court, or any Justice thereof," &c.

Thereupon the chartered rights of the corporation terminated. *Wiswell* v. *Starr*, 48 Maine, 401; recognized in *Hewett* v. *Adams*, 50 Maine, 279 and 283; in which case the Court remark, on page 280, that " the proceedings under § 62 and § 67 have a different origin and contemplate different results."

Such was the law and such were the incipient proceedings in this case up to March 16, 1855, when an additional Act was passed, c. 164, § 6, which provides that, " if it shall be made to appear to the Court that the assets aforesaid are insufficient to pay the said claims against the bank, said receivers shall, forthwith, file their bill in equity in their own names, but in behalf of the claimants, against the persons who are or were stockholders in such bank, and who by law may be liable to contribute to the payment of its debts. And they shall be cited to appear before the Court or Judge upon such notice as he shall order to be given."

The mode and manner by which " it shall be made to appear to the Court" is disclosed in § 3. "And said receivers shall make a report in detail to the Supreme Judicial Court, at such time or times as the same shall direct, specifying all claims presented, and the amount allowed in each case; which report shall be accepted, if no objection shall be made thereto, and the Court shall be satisfied the same is correct."

§ 4. " When such report shall be presented to the Court for acceptance, any claimant, whose claim shall be disallowed in whole or in part, or any claimant interested in the rejection of any claim, may make his objection and the Court shall hear the parties and determine the same," &c. By § 5, when the assets are insufficient to pay the claims allowed, then " it has been made to appear to the Court."

The foregoing provision was remedial, otherwise it could not have affected past transactions, and might not, as it was, except for § 8, which enacts that, — " The foregoing provis-

ions shall be construed to apply to all cases where receivers have been already appointed and have not yet liquidated and paid the demands against any bank." The receivers in this case, being within such predicament, were embraced within that provision, but without the loss of their official identity as receivers of a corporation annihilated by a perpetual injunction.

Next in the order of time appears the Revision of the Statute of 1857, c. 47, which is a reënactment of previous laws relating· to banks, arranged and consolidated. § 57 corresponding with § 62 of the R. S. of 1841, and § 60 with § 67. And by § 64, the same distinction between the two sets of receivers is manifestly recognized.

We have thus seen that the bank commissioners, after having filed their complaint and procured a perpetual injunction, have discharged all their statute duties, and, consequently, are no longer in Court, and that the bank disappears for the same cause. That record is then made up. A new record only remains to be made of subsequent transactions between the receivers of the corporation funds, and the creditors or claimants.

Who then "shall make it appear to the Court" that the funds in the hands of the receivers are insufficient to pay the claims? The bank cannot — the stockholders will not. It must then be the claimants.

So it appears, that, at the January term, 1859, William Wilson and others, creditors of the bank, filed their·petition against the receivers, requiring them "to make to the Court a detailed report of their doings, and of the amount and value of the assets in their hands." Whereupon, after due notice, by order of the Court at the same term, the receivers filed their report and vouchers, showing a large bank indebtedness, and were ordered to "file a bill in equity against the stockholders, to compel each and all of them to pay in to them the amount of their stock, in accordance with the statute." At the January term, 1860, further action was

had on the report, and, to cure any seeming defects, the same was accepted.

The bill was acordingly filed on or about May 10th, 1860, which is now before us, together with the respondents' several answers and the proofs.

It is now contended by the respondents, and is the material objection raised in defence, that the acceptance of the receivers' detailed report, and the action of the Court thereon, was in response to Wilson and others' petition, and that no person other than those therein named had legal notice of its pendency. That is an objection which neither of the respondents is authorized to make. They were never parties in any of the prior proceedings, and there is no law requiring them to be made such. What persons are permitted to make objections to the receivers' report when presented?

An answer to this inquiry carries us back to the sections of the statutes already cited. See § 71 of c. 47 of R. S. of 1857. " When such report is so presented, any claimant interested in the decision of the receivers in the allowance or rejection of any claims, may make his objection," &c.

No claimants have ever objected, and do not now object, but, on the contrary, some of them, and for aught that appears, all of them, or at least a part for the whole, were the petitioners for acceptance of the report and for the proceedings in chancery.

When a party asks the Court, having jurisdiction over the subject matter, to nullify or set aside their recorded proceedings, it should appear that the party has been aggrieved, and the allegation should be sustained by proof. None such appears.

All the documents disclosing the whole proceedings are filed in the clerk's office. From these and the docket entries a record can be made up, which is never done until the termination of the suit.